## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WESTFIELD INSURANCE COMPANY**<br>1 Park Circle<br>Westfield Center, OH 44251<br><br>Plaintiff,<br>v.<br><br>**TITEFLEX CORPORATION**<br>1116 Vaughn Parkway<br>Portland, TN 37148<br><br>Defendant. | CIVIL ACTION<br><br>No. |

## COMPLAINT

Plaintiff, Westfield Insurance Company, as subrogee of Sara and Patrick Doran (hereinafter "Plaintiff"), by and through its undersigned counsel, hereby brings this Complaint and alleges as follows:

## PARTIES

1. Plaintiff, Westfield Insurance Company (hereinafter "Westfield") is a corporation organized and existing under the laws of the State of Ohio with its principal place of business located at 1 Park Circle, in Westfield Center, Ohio.

2. At all times material hereto, Westfield was licensed and authorized to issue insurance policies in the Commonwealth of Pennsylvania.

3. Defendant Titeflex Corporation (hereinafter "Titeflex"), is a corporation organized and existing under, and pursuant to, the laws of the State of Connecticut with its principal place of business located at 1116 Vaughn Parkway in Portland, Tennessee.

## JURISDICTION AND VENUE

4. This action is commenced in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1332 as there is diversity of citizenship between the Plaintiff and the Defendant.

5. Furthermore, the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.

6. This action is properly venued in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(a) as a substantial part of the events or omissions giving rise to this action occurred within the Eastern District of Pennsylvania.

## FACTUAL BACKGROUND

7. Plaintiff's insureds, Sara and Patrick Doran, are the owners of a single-family residential home located at 299 Cobblestone Lane in Bethlehem, Pennsylvania (hereinafter the "Property").

8. At all times material hereto, Westfield insured Mr. and Mrs. Doran and the Property pursuant to a policy of insurance, Policy Number WNE0217705 (hereinafter, the "Policy").

9. This matter arises from an August 2, 2017 fire at the Property (hereinafter, the "Fire").

10. At all times material hereto, Defendant Titeflex was engaged in the business of designing, engineering, manufacturing, inspecting, testing, marketing, selling, distributing and/or placing into the stream of commerce a product known as corrugated stainless steel tubing (hereinafter "CSST") for use in the distribution of natural gas and/or propane in various applications, including residential homes.

11. Titeflex designed, engineered, manufactured, inspected, distributed, tested, marketed, packaged and/or sold CSST under the brand name "Gastite".

12. Upon information and belief, Plaintiff's insureds' Property was constructed in 2003 and 2004.

13. During the course of that construction or shortly thereafter, Gastite CSST, manufactured by the Defendant, was installed in the Property for the distribution of fuel gas.

14. Prior to the installation of the Gastite in the Property, Titeflex knew or should have known, of the propensity of Gastite to fail when energized by lightning.

15. On August 2, 2017, a direct lightning strike occurred at the Property.

16. The energy from the lightning strike melted a hole in the Gastite installed at the Property.

17. This hole allowed fuel gas to escape from the Gastite and ignite a substantial fire which spread to the rest of the Property causing extensive damage.

18. As a result of the August 2, 2017 fire, Plaintiff's insureds suffered significant damage to the Property, their personal property located therein and also incurred additional living expenses totaling in excess of $75,000.00.

19. As a result of the Fire, and pursuant to the terms and conditions of the Policy, Westfield has made and/or will make payments to its insureds in excess of $75,000.00 to compensate them for the losses and damages they sustained as a result of the fire.

20. As a result of the payments made to its insureds and pursuant to the terms and conditions of the Policy, Westfield is legally, equitably and contractually subrogated to the rights of its insureds to the extent of its payments.

## COUNT I – NEGLIGENCE

21. Plaintiff incorporates the allegations set forth in the preceding paragraphs of the Complaint as if fully set forth herein at length.

22. Defendant Titeflex owed Plaintiff's insureds a duty to exercise ordinary care in connection with the design and manufacture of the Gastite CSST, the selection of materials used to manufacture the Gastite, the assembly of the Gastite, the inspection of the Gastite and the packaging of the Gastite in order to protect users from an unreasonable risk of harm when using Gastite for its intending purpose.

23. Defendant Titeflex owed a duty to Plaintiff's insureds to give reasonable and adequate instructions with regard to the conditions and methods for the safe use of Gastite since the danger of fire was reasonably foreseeable when Gastite was used in the manner in which it was intended.

24. Defendant Titeflex owed Plaintiff's insureds a duty to exercise ordinary care and skill in connection with design, engineering, manufacture, inspection, testing, marketing, sale and/or distribution of Gastite.

25. Defendant Titeflex owed Plaintiff's insureds a duty to exercise ordinary care to protect Plaintiff's insureds against the risk of fire.

26. Defendant Titeflex owed Plaintiff's insureds a duty to exercise ordinary care to ensure that Gastite was a designed, engineered, manufactured, inspected, tested, marketed, sold, distributed and/or placed into the stream of commerce in a manner so that it was reasonably fit for its intended purpose.

27. Defendant Titeflex owed Plaintiff's insureds a duty to warn that the Gastite was not reasonably fit for the purpose for which it was designed, engineered, manufactured,

inspected, tested, marketed, sold, distributed, placed into the stream of commerce and/or intended to be used.

28. Defendant Titeflex breached these duties by failing to exercise ordinary care and skill in the design, engineering, manufacture, inspection, testing, marketing, sale, and distribution of Gastite, both generally and specifically, as follows:

    a. Negligently designing, engineering, manufacturing, testing, marketing, distributing, selling and/or inspecting Gastite and/or placing Gastite into the stream of commerce;

    b. Failing to observe and exercise a reasonable degree of care and skill in the design, engineering, manufacture, testing, marketing, distribution, sale and/or inspection of Gastite;

    c. Failing to design, engineer, manufacture, test, market, distribute, sell and/or inspect Gastite so that it was safe and fit for its intended use;

    d. Failing to ensure that Gastite could withstand anticipated levels of electrical activity generated by lightning strikes;

    e. Failing to implement an appropriate bonding and/or grounding procedure in connection with the installation of Gastite;

    f. Failing to warn Plaintiff's insureds, either pre or post-sale, that the Gastite piping was defective and could start a fire;

    g. Failing to warn installers and/or distributors, either pre or post-sale, that the Gastite piping was defective and could start a fire;

    h. Failing to stop the distribution of its Gastite once it knew and/or should have known that its Gastite could fail when energized by lightning and cause a fire;

i. Failing to properly train and/or supervise its employees, agents, servants, contractors and/or other representatives in the design, engineering, manufacture, testing, marketing, distribution, sale and/or inspection of the Gastite piping so that it was safe and free from risk of fire;

j. Utilizing engineers, designers, laborers, consultants, contractors and/or employees that Defendant Titeflex knew, or in the exercise of due care, should have known, were not properly trained to design, engineer, manufacture, test, inspect, sell, market and/or distribute Gastite and/or place Gastite into the stream of commerce;

k. Failing to design, engineer, manufacture, market, distribute, sell, test and/or inspect Gastite and/or place Gastite into the stream of commerce in accordance with local, state and/or federal statutes and/or other recognized and/or applicable codes, laws, rules, regulations and/or other requirements;

l. Failing to discover, repair and/or correct the defect(s) and/or deficiency(ies) in the design, engineering, manufacture, packaging, testing, inspection, marketing, distribution and/or sale of Gastite which may have caused the Gastite to fail in the course of its normal and intended use;

m. Failing to design, engineer, manufacture, test, inspect, market, distribute and/or sell Gastite and/or place the Gastite into the stream of commerce in such a way as to not create a foreseeable risk of harm to people and/or property;

n. Failing to provide installers, distributors, salespeople and/or intended users with adequate instructions, warnings and/or information concerning the defect(s) and/or deficiency(ies) that caused the Gastite to fail in the course of its normal and intended use;

  o. Failing to properly design, engineer, manufacture, inspect, test, distribute, sell and/or market the Gastite and/or place the Gastite into the stream of commerce so as to ensure its fitness and safety; and

  p. Such other acts of negligence as will be revealed in discovery.

29. The August 2, 2017 Fire and resulting damages were the direct and proximate result of the aforementioned negligence, gross negligence, recklessness and/or carelessness and/or negligent acts and omissions of Defendant Titeflex.

30. The negligence, gross negligence, recklessness and/or carelessness and/or negligent acts and/or omissions described in the preceding paragraphs were committed by Defendant Titeflex and/or its duly authorized agents, servants, workmen, contractors, employees and/or other authorized representatives, acting within the scope and during the course of their relationship, agency and/or employment.

31. As a result of the August 2, 2017 fire, Plaintiff's insureds suffered significant damage to the Property, their personal property located therein and also incurred additional living expenses totaling in excess of $75,000.00.

32. As a result of the Fire, and pursuant to the terms and conditions of the Policy, Westfield has made and/or will make payments to its insureds in excess of $75,000.00 in connection with the losses and damages they sustained as a result of the fire.

33. As a result of the payments made to its insureds and pursuant to the terms and conditions of the Policy, Westfield is legally, equitably and contractually subrogated to the rights of its insureds to the extent of its payments.

**WHEREFORE** Plaintiff demands judgment in its favor and against Defendant Titeflex on Count I of the Complaint for compensatory damages in an amount in excess of $75,000.00

together with interest, costs of suit and such other relief as this Court deems just and proper under the circumstances.

## COUNT II – STRICT PRODUCTS LIABILITY

34. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

35. Defendant Titeflex was engaged in the business of designing, engineering, manufacturing, inspecting, testing, distributing, selling and/or marketing Gastite and/or placing Gastite into the stream of commerce.

36. Defendant Titeflex's Gastite was expected to, and did, reach the Property without substantial change in its condition.

37. Defendant Titeflex supplied the Gastite in a defective condition that rendered it unreasonably dangerous.

38. The Gastite was defective, in that it failed, released gas and caused a substantial Fire.

39. Plaintiff's insureds utilized the Gastite for the purposes and in the manner intended and/or reasonably anticipated by Defendant Titeflex.

40. Plaintiff's insureds could not, by the exercise of reasonable care, have discovered the defect(s) and/or deficiency(ies) herein mentioned and/or perceived the danger inherent in the Gastite.

41. Plaintiff's insureds' damages resulting from the August 2, 2017 Fire were the result of:

    a. The manufacturing defect in the Gastite, evidenced by the fact that it failed, leaked gas and ignited a Fire, which existed when the Gastite left the possession and/or control of Titeflex;

    b. The failure to warn Plaintiff's Insureds of the serious and foreseeable risk of harm posed by the defect(s) and/or deficiency(ies) in the Gastite, which caused it to fail, leak gas and ignite a fire in the course of its normal and intended use;

    c. The design defect in the Gastite, evidenced by the failure of the Gastite, resultant gas leak and Fire, which existed when the Gastite left the possession and/or control of Titeflex;

    d. The risk of danger posed by the Gastite and its component parts which would cause a reasonable person to conclude that the probability and seriousness of the harm caused by the product outweigh the burden or costs of taking precautions; and

    e. The unreasonably dangerous and defective nature of the Gastite which presented a danger that was unknowable and unacceptable to the average or ordinary consumer.

42.     The defective condition of the Gastite was the direct, proximate and foreseeable cause of the August 2, 2017 Fire and Plaintiff's insureds' resultant damages.

43.     As a result of the August 2, 2017 fire, Plaintiff's insureds suffered significant damage to the Property, their personal property located therein and also incurred additional living expenses totaling in excess of $75,000.00.

44. As a result of the Fire, and pursuant to the terms and conditions of the Policy, Westfield has made and/or will make payments to its insureds in excess of $75,000.00 in connection with the losses and damages they sustained as a result of the fire.

45. As a result of the payments made to its insureds and pursuant to the terms and conditions of the Policy, Westfield is legally, equitably and contractually subrogated to the rights of its insureds to the extent of its payments.

**WHEREFORE** Plaintiff demands judgment in its favor and against Defendant Titeflex on Count II of the Complaint for compensatory damages in an amount in excess of $75,000.00 together with interest, costs of suit and such other relief as this Court deems just and proper under the circumstances.

## **COUNT III – BREACH OF WARRANTY OF MERCHANTABILITY**

46. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein at length.

47. Defendant Titeflex expressly and/or impliedly agreed to design, engineer, manufacture, inspect, test, distribute, sell and/or market Gastite and/or place Gastite into the stream of commerce in a good and workmanlike manner, and in accordance with all relevant local, state and federal laws, rules, regulations and codes, as well as in accordance with all industry standards and trade practices.

48. Defendant Titeflex could reasonably expect that homeowners generally, and Plaintiff's insureds specifically, might utilize Gastite.

49. Plaintiff's insureds relied on Defendant Titeflex's express and/or implied representations that the Gastite was safe and fit for its normal and intended use.

50. Plaintiff's insureds utilized the Gastite in a foreseeable and ordinary manner and yet sustained damage when the Fire occurred due to defects in the design, engineering, manufacture, inspection, testing, distribution, sale and/or marketing of the Gastite which caused damage to the Property.

51. Defendant Titeflex designed, engineered, manufactured, inspected, tested, distributed, sold, marketed and/or placed into the stream of commerce Gastite that was not of merchantable quality, in that it was not fit for the ordinary purpose for which it was intended, and was not adequately contained, packaged or labeled.

52. The Gastite was not fit for the ordinary purpose for which it was intended because it failed when lightning struck at or near the Property, thereby releasing gas and igniting a fire that caused significant damage to the Property.

53. The Fire of August 2, 2017 and resulting damages were the direct, proximate and foreseeable result of the unmerchantable condition of the Gastite sold by Defendant Titeflex.

54. As a result of the August 2, 2017 fire, Plaintiff's insureds suffered significant damage to the Property, their personal property located therein, and also incurred additional living expenses totaling in excess of $75,000.00.

55. As a result of the Fire, and pursuant to the terms and conditions of the Policy, Westfield has made, and/or will make, payments to its insureds in excess of $75,000.00 in connection with the losses and damages they sustained as a result of the fire.

56. As a result of the payments made to its insureds and pursuant to the terms and conditions of the Policy, Westfield is legally, equitably and contractually subrogated to the rights of its insureds to the extent of its payments.

**WHEREFORE** Plaintiff demands judgment in its favor and against Defendant Titeflex on Count III of the Complaint for compensatory damages in an amount in excess of $75,000.00 together with interest, costs of suit and such other relief as this Court deems just and proper under the circumstances.

### JURY DEMAND

Plaintiff, Westfield Insurance Company hereby demands a trial by jury as to all claims.

**LAW OFFICES OF ROBERT A. STUTMAN**

Dated: June 14, 2019

_____
Thomas J. Underwood, Jr., Esquire (81244)
20 East Taunton Road, Suite 403
Berlin, NJ 08009
Phone: (856) 767-6800 ext. 11
Fax:    (856) 767-6810
Email: underwoodt@stutmanlaw.com
*Attorneys for Plaintiff, Westfield Insurance Company*